# EXHIBIT A

## Premarital Agreement

The parties to this Premarital Agreement are FRANK RICHARD AHLGREN, III. (hereinafter "PACO"), a single man of Austin, Travis County, Texas and STEPHANIE MARIE URE (hereinafter "STEPHANIE"), a single woman of Austin, Travis County, Texas.

### Stipulations

1.      PACO and STEPHANIE, who are not now married, intend to become husband and wife by ceremony to be performed in Austin, Texas.

2.      The parties are entering into this agreement in accordance with article XVI, section 15, of the Texas Constitution, as amended, and relevant sections of the Texas Family Code, altering by agreement what their marital property rights would be in certain property on and during their marriage and determining, in part, the claims each may lawfully assert against the other party and his or her estate, if and when the marriage is dissolved by judicial act or death. Section 3.001 of the Texas Family Code defines a spouse's separate property as the property owned or claimed by the spouse before marriage; the property acquired by the spouse during marriage by gift, devise, or descent; and the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. Section 3.002 of the Texas Family Code defines community property as the property, other than separate property, acquired by either spouse during marriage. Texas law provides that income from separate property during the marriage is community property. A premarital agreement can and very often does make what would otherwise be community property instead be separate property.

3.      The Texas Family Code provides that the parties to a premarital agreement may contract concerning any matter, including personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty and as long as the rights of a child to receive support are not adversely affected.

4.      Each party presently owns real and/or personal property as described in Schedules A and B. Schedule A contains the property of PACO, and Schedules B contains the property of STEPHANIE. The schedules are attached to this agreement and made a part of it for all purposes.

5.      The parties, by entering into this agreement, are not attempting to prejudice the rights of preexisting creditors.

6.      The parties do not intend by this agreement to make a gift from one party to the other party, but rather to enter into an agreement that will control their marital property rights and other spousal rights in a manner that is in important respects different from the manner in which the separate and community property rights or spousal claims would arise by operation of law in the absence of this agreement.

1



**Confidential - Attorneys' Eyes Only**

7.    The parties intend to clarify their respective property rights to eliminate any uncertainty about those rights.

8.    PACO and STEPHANIE intend by this agreement that no community property will be created during their marriage.

In consideration of the mutual love and respect between the parties; in consideration of the mutual promises, agreements, partitions, exchanges, conveyances, releases, waivers, and assignments contained in this agreement; in consideration of the parties' desire to establish rights and obligations by this agreement; and with the intent to be bound fully by the terms of this agreement, the parties covenant, agree, and contract as follows:

## Article 1

## Representations and Disclosures

### 1.1    *No Oral Representations*

Neither party is relying on any representations made by the other party about financial matters of any kind, other than the representations stated in this agreement and in any schedule or exhibit attached to it.

### 1.2    *Disclosure*

Each party represents and warrants to the other party that he or she has, to the best of his or her ability, made to the other party a complete and accurate disclosure of the nature and extent of his or her property, including values, and financial obligations, contingent or otherwise, and that the disclosure includes but is not limited to the properties and liabilities set forth in Schedules A, B, C, and D attached to this agreement and other documentation exchanged between the parties before their signing of this agreement. Each party additionally acknowledges that, before the signing of this agreement, he or she has been provided a fair and reasonable disclosure of the other party's income, property, and financial obligations. Furthermore, and before their execution of this agreement, PACO and STEPHANIE have previously offered to provide, or have provided, to the other party all information and documentation pertaining to all income, all property and its value, and all financial obligations that have been requested by the other party. PACO and STEPHANIE each acknowledge that he or she has, or reasonably could have had, full and complete knowledge of the property owned by the other party, as well as complete knowledge of all financial obligations of the other party.

## Article 2

## Children

### 2.1    *Children*

2

Confidential - Attorneys' Eyes Only

URE_001069

PACO is the parent of Elizabeth De La Fuente Ahlgren, female, born November 28, 2007 in Austin, Texas.

PACO is also the parent of Sofia Elise Ahlgren, female, born March 11, 2013 in Austin, Texas.

2.2    *Obligations to Other Party's Children*

Neither party intends to assume and, unless a contrary intent is indicated by appropriate adoption proceedings, neither party will assume by virtue of their marriage any responsibility or obligation now existing or accruing in the future with respect to the other party's child or children, as the case may be, natural or adopted. The parties specifically agree that neither party will be responsible for or be required to pay any expenses for education, including college, for the other party's child or children, as the case may be. Each party agrees to indemnify and hold the other party and the other party's property harmless from the assertion of any such claim or obligation now or in the future, except that if either party voluntarily pays or advances any money for educational or other expenses of the other party's child, no obligation of indemnification or reimbursement will arise unless an explicit written understanding to indemnify or reimburse is executed contemporaneously with the payment or advance.

Article 3

Property of the Parties

3.1    *No Joint Ownership*

The parties do not jointly own, legally or equitably, any property or property rights, nor does any sort of partnership or joint venture, oral or written, exist between the parties.

3.2    *Separate Property of PACO*

STEPHANIE agrees that the following will constitute the separate property of PACO:

1.    all properties listed in Schedule A attached to this agreement;

2.    all mutations, changes, and increases in kind or in value of PACO's separate property;

3.    all increases in kind or in value of PACO's separate property resulting from the time, talent, labor, or personal efforts of either or both parties;

4.    all income and revenues from PACO's separate property, all income and property acquired as a result of PACO's separate property, and all income and property resulting from the reinvestment of that income, including interest and dividend income;

3

5.      all of PACO's interest in or claim to any future profits of any partnership, joint venture, or corporation owned by PACO at the time of the parties' marriage or acquired by PACO following the marriage, whether the profits are distributed or undistributed;

6.      all profits, commissions, distributions, revenues, royalties, wages, salary, earnings, income, employee benefits, partnership benefits, corporate benefits, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received by PACO after the date of the parties' marriage, and all income and property derived from the reinvestment of PACO's profits, commissions, distributions, revenues, royalties, wages, salary, earnings, income, employee benefits, partnership benefits, corporate benefits, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received during the marriage, together with all interest and dividend income received by PACO during the marriage;

7.      all future contributions to all individual retirement accounts, all retirement plans, and all other employee benefit plans made by or on behalf of PACO after the date of the parties' marriage, together with all increases in value of all such plans;

8.      all interests in any trust in which PACO has an interest, including but not limited to all corpus of those trusts, as well as all distributed and undistributed income from those trusts;

9.      all recovery for personal injuries and/or property losses sustained by PACO during the parties' marriage, including any recovery for loss of earning capacity during the marriage; and

10.     all property and property rights acquired by PACO by gift, devise, or descent.

### 3.3    *Separate Property of STEPHANIE*

PACO agrees that the following will constitute the separate property of STEPHANIE:

1.      all properties listed in Schedule B and E attached to this agreement;

2.      all mutations, changes, and increases in kind or in value of STEPHANIE's separate property;

3.      all increases in kind or in value of STEPHANIE's separate property resulting from the time, talent, labor, or personal efforts of either or both parties;

4.      all income and revenues from STEPHANIE's separate property, all income and property acquired as a result of STEPHANIE's separate property, and all income and property resulting from the reinvestment of that income, including interest and dividend income;

5.      all of STEPHANIE's interest in or claim to any future profits of any partnership, joint venture, or corporation owned by STEPHANIE at the time of the parties' marriage or acquired by STEPHANIE following the marriage, whether the profits are distributed or undistributed;

Confidential - Attorneys' Eyes Only

URE_001071

6.    all profits, commissions, distributions, revenues, royalties, wages, salary, earnings, income, employee benefits, partnership benefits, corporate benefits, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received by STEPHANIE after the date of the parties' marriage, and all income and property derived from the reinvestment of STEPHANIE's profits, commissions, distributions, revenues, royalties, wages, salary, earnings, income, employee benefits, partnership benefits, corporate benefits, director's compensation, bonuses, stock, stock options, warrants, or other compensation or benefits of any type earned or received during the marriage, together with all interest and dividend income received by STEPHANIE during the marriage;

7.    all future contributions to all individual retirement accounts, all retirement plans, and all other employee benefit plans made by or on behalf of STEPHANIE after the date of the parties' marriage, together with all increases in value of all such plans;

8.    all interests in any trust in which STEPHANIE has an interest, including but not limited to all corpus of those trusts, as well as all distributed and undistributed income from those trusts;

9.    all recovery for personal injuries and/or property losses sustained by STEPHANIE during the parties' marriage, including any recovery for loss of earning capacity during the marriage; and

10.    all property and property rights acquired by STEPHANIE by gift, devise, or descent.

### 3.4    *No Commingling Intended*

Neither party intends to commingle his or her separate property with the separate property of the other party, except when intentionally done in a joint financial account, and neither party may claim an interest in any separate property of the other party as a result of such commingling, except as provided in this agreement.

### 3.5    *No Community Estate Will Arise*

PACO and STEPHANIE specifically understand and agree that no community estate will arise or be created during their marriage. Therefore, PACO and STEPHANIE agree that all earnings for personal services and services rendered, including bonuses, director's compensation, commissions, and wages or salary of each party, as well as all other income received by a party, including interest and dividend income, profits, distributions, revenues, royalties, stock, stock options, warrants, and other compensation and benefits of any type and any income and property derived from the reinvestment of such earnings and income, will be the separate property of the respective party.

### 3.6    *Asset Descriptions*

The parties have tried to use the correct legal description for each asset listed in any schedule attached to this agreement. If any asset is incorrectly described, the description used is

5

adequate for the purposes of this agreement and accompanying schedules, and the parties agree to execute any additional paperwork required to confirm ownership in the name of the party in whose schedule the asset appears.

### 3.7    Confirmation of Agreement and Income from Separate Property

The parties agree that, not later than thirty days after their marriage, they will each execute the Property Agreement between Spouses (the "Property Agreement"), a copy of which is attached to this agreement as Schedule "E". The parties agree that, to the maximum extent allowed by law, the failure to execute the Property Agreement will not invalidate this agreement or affect any of its terms or provisions. Whether the Property Agreement is executed or not, all the provisions of this agreement are binding, including but not limited to the effect of causing the income from the separate property of PACO to be PACO's separate property and the income from the separate property of STEPHANIE to be STEPHANIE's separate property. Confirmation of this agreement in the form of the Property Agreement is in effect a partition and exchange agreement. All future earnings and income arising from the separate property of PACO shall be the separate property of PACO unless the parties specifically agree in writing to the contrary. All future earnings and income arising from the separate property of STEPHANIE shall be the separate property of STEPHANIE unless the parties specifically agree in writing to the contrary.

### 3.8    Management of Properties

Each party will have the full, free, and unrestricted right to manage the separate property over which he or she has control under section 3.101 of the Texas Family Code or succeeding provisions of similar import and nature, including without limitation the right to convey or encumber the property; to dispose of it by sale, gift, or otherwise; and to deal with it without taking into consideration any rights or interests of the other party. If the joinder of PACO or STEPHANIE ("joining party") should be required by law in connection with the execution of any document by the other party with respect to the separate property of the other party, on request and from time to time, the joining party must execute all such documents necessary to effect the desires of the other party, including gift tax returns, but without any personal liability of the joining party. Neither party will have the authority to encumber or dispose of the other party's separate property without the other party's express written consent. Notwithstanding any of the provisions set forth in this section 3.8, the parties agree that any gift that would utilize some or all of the joining party's annual gift tax exclusion amount or unified lifetime credit must be consented to in writing by the joining party prior to the making of the gift or the timely filing of the applicable gift tax return with the Treasury Department.

### 3.9    Certain Events Not Evidence of Community Property

The following events may not, under any circumstances, be considered evidence of any intention to create community property:

1.    the filing of joint tax returns;

6

2.     the taking of title to property, whether real or personal, in joint tenancy or in any other joint or common form;

3.     the designation of one party by the other party as a beneficiary of his or her estate or as trustee or any other form of fiduciary;

4.     the combining or mixing by one party of his or her separate funds or property with the separate funds or property of the other party, including the pledging of joint or separate credit for the benefit of the other party's separate estate;

5.     any oral statement by either party;

6.     any written statement by either party, other than a written agreement signed by both parties to convert separate property to community property pursuant to the Texas Family Code;

7.     the payment from the funds of either party for any obligations, including but not limited to the payment of mortgages, interest, real property taxes, repairs, or improvements on a separately or jointly held residence; and

8.     the joint occupation of a separately owned residence, even though designated as a homestead.

The provisions of this section 3.9 are not comprehensive.

3.10    *No Legal Action against Separate Property of PACO*

In recognition of the fact that all property described on Schedule A of this agreement is stipulated and agreed to be the separate property of PACO, STEPHANIE expressly disclaims any right to take any legal action against any of the entities listed on Schedule A in connection with any divorce proceeding or other legal action regarding this agreement. Specifically, STEPHANIE agrees that she is not entitled to, and shall not seek, any temporary restraining order, injunctive relief, receivership, or other legal relief that would in any way restrict, inhibit, or affect the ability of any of the entities listed on Schedule A of this agreement from operating their business affairs as each entity deems appropriate, including each such entity's right to sell, purchase, or alienate property, to transfer or pledge property, to incur or pay debt, to exercise stock options or warrants, to issue stock, to raise capital, to liquidate any assets, to enter into or change any contractual relationships, to make expenditures or incur any indebtedness, or to merge or in any way alter its business organization or form.

3.11    *No Legal Action against Separate Property of STEPHANIE*

In recognition of the fact that all property described on Schedule B of this agreement is stipulated and agreed to be the separate property of STEPHANIE, PACO expressly disclaims any right to take any legal action against any of the entities listed on Schedule B in connection with any divorce proceeding or other legal action regarding this agreement. Specifically, PACO agrees that he is not entitled to, and shall not seek, any temporary restraining order, injunctive

7

**Confidential - Attorneys' Eyes Only**

relief, receivership, or other legal relief that would in any way restrict, inhibit, or affect the ability of any of the entities listed on Schedule B of this agreement from operating their business affairs as each entity deems appropriate, including each such entity's right to sell, purchase, or alienate property, to transfer or pledge property, to incur or pay debt, to exercise stock options or warrants, to issue stock, to raise capital, to liquidate any assets, to enter into or change any contractual relationships, to make expenditures or incur any indebtedness, or to merge or in any way alter its business organization or form.

### 3.12    Other Temporary Orders during Dissolution

If either party files a dissolution proceeding, the parties agree that during the pendency of the action neither party will request or seek to enforce any restraining order or injunction that could have the effect of inhibiting or prohibiting a party from making decisions concerning or disposing of his or her separate property. Further, neither party will have the right to the temporary use or possession of any separate property owned solely by the other party, either real or personal. Nothing in this section 3.12 affects the ability of either party to request or seek to enforce any order for the benefit of a child of both parties.

Article 4

Liabilities

### 4.1    Liabilities of PACO

The liabilities and obligations described in Schedule C, which is attached to this agreement and made a part of it for all purposes, and all other liabilities and obligations of PACO as of the date of the parties' marriage that are not included in Schedule C are the sole and separate property liabilities and obligations of PACO and must be satisfied and paid solely from his separate estate. PACO agrees to forever hold harmless, indemnify, and defend STEPHANIE and her property from any claim arising from these liabilities and obligations.

Any taxes, interest, or penalties that PACO may owe to any taxing authority, foreign or domestic, for years or taxable periods before the date of the parties' marriage are the sole and separate property liabilities and obligations of PACO, to be satisfied and paid solely from his separate estate and from which he agrees to forever hold harmless, indemnify, and defend STEPHANIE and her property from any claim.

### 4.2    Liabilities of STEPHANIE

The liabilities and obligations described in Schedule D, which is attached to this agreement and made a part of it for all purposes, and all other liabilities and obligations of STEPHANIE as of the date of the parties' marriage that are not included in Schedule D are the sole and separate property liabilities and obligations of STEPHANIE and must be satisfied and paid solely from her separate estate. STEPHANIE agrees to forever hold harmless, indemnify, and defend PACO and his property from any claim arising from these liabilities and obligations.

8

Confidential - Attorneys' Eyes Only

Any taxes, interest, or penalties that STEPHANIE may owe to any taxing authority, foreign or domestic, for years or taxable periods before the date of the parties' marriage are the sole and separate property liabilities and obligations of STEPHANIE, to be satisfied and paid solely from her separate estate and from which she agrees to forever hold harmless, indemnify, and defend PACO and his property from any claim.

### 4.3    Future Business Transactions of PACO

To protect STEPHANIE's separate property from liability associated with any future business transactions following the parties' marriage, excluding transactions conducted by PACO on behalf of his employer, PACO agrees to take all reasonable steps and perform all reasonable actions to ensure that all future business transactions in which PACO is involved during the parties' marriage are handled either through a separate-property entity of PACO that exists now or through a new entity capitalized with PACO's separate property in the future. Further, PACO agrees to take all steps and perform all actions necessary to prevent STEPHANIE's separate property from being an obligor, a guarantor, or in any way liable for any future business transactions in which PACO participates.

### 4.4    Future Business Transactions of STEPHANIE

To protect PACO's separate property from liability associated with any future business transactions following the parties' marriage, excluding transactions conducted by STEPHANIE on behalf of her employer, STEPHANIE agrees to take all reasonable steps and perform all reasonable actions to ensure that all future business transactions in which STEPHANIE is involved during the parties' marriage are handled either through a separate-property entity of STEPHANIE that exists now or through a new entity capitalized with STEPHANIE's separate property in the future. Further, STEPHANIE agrees to take all steps and perform all actions necessary to prevent PACO's separate property from being an obligor, a guarantor, or in any way liable for any future business transactions in which STEPHANIE participates.

### 4.5    Pending or Future Litigation

PACO agrees to indemnify and hold STEPHANIE and her property harmless from all costs and liabilities arising from all pending and future litigation caused or alleged to have been caused solely by PACO's acts or omissions.

STEPHANIE agrees to indemnify and hold PACO and his property harmless from all costs and liabilities arising from all pending and future litigation caused or alleged to have been caused solely by STEPHANIE's acts or omissions.

9

## Article 5

### Future Credit Transactions

#### 5.1    *Future Credit Transactions of Parties*

If either party enters into a transaction wherein either party becomes obligated on any debt, and unless a contrary intent is specifically and expressly stated, the obligation must be satisfied by the party incurring the obligation or liability wholly from that party's separate property, and that party must hold the other party and his or her property harmless from the obligation and indemnify him or her if he or she is ever required to satisfy the obligation. The assets, if any, acquired through any such credit transactions will be and remain the separate property of a party to the extent the party obligates his or her separate property for the credit extended in acquiring the assets or resulting in the acquisition of the assets. Similarly, any business failure of the parties or any bankruptcy, reorganization, composition, arrangement, or other debtor/creditor action of or against a party will in no way affect the other party, and neither party is relying or will rely on the other party for any credit, accommodation, or indulgence in these regards.

## Article 6

### Household and Personal Expenses

#### 6.1    *Household and Personal Expenses*

The parties may agree to maintain one or more joint bank accounts, which will be designated as the "Household Account" or some similar name, and that the account will be used for the purposes described below. Neither party shall have any obligation to make deposits of any denomination into such account. Except as otherwise specifically stated, the funds on deposit in the account will be used for payment of the mortgage payment (principal and interest), rent, groceries, utilities, maintenance and repairs, and all other miscellaneous household expenses (collectively called "living expenses") that may arise during the marriage. The payment by one party of all or a majority of any living expenses will not create a right of reimbursement by the party paying those living expenses, affect the character of any property currently in existence or property that may be acquired in the future, or create an ownership interest in any property by a party that the party does not already have and does not acquire in the future by other means.

To the extent the parties elect to open and maintain one or more joint bank accounts, each party will have an undivided one-half interest in the funds on deposit in the account(s) as his or her separate property. Each party will have an undivided one-half interest in all assets acquired with any funds from a joint bank account as his or her separate property.

Any joint bank account(s) shall be recognized by the financial institution as a joint tenants account, with right of survivorship (JTWRS). Therefore, during marriage and upon divorce, each party will have an undivided one-half interest in the funds on deposit in the account(s) as his or her separate property. However, if in the event of the death of either party,

10

all funds remaining in any joint bank account(s) will be the sole and separate property of the surviving party.

## Article 7

### Joint Acquisition of Assets

#### 7.1    Joint Acquisition of Assets

The parties will have the option, but not the obligation, to acquire assets together in their joint names. If the parties jointly acquire assets following their marriage, they will each own an undivided interest in the jointly acquired assets as their respective sole and separate property in an amount equal to the percentage of their respective contributions toward the purchase of the assets. If the parties jointly acquire assets, and to the extent legal title to any or all of the assets can be perfected in their joint names, such as title to an automobile, boat, or real property, they will obtain title in their joint names. However, even though title to an asset acquired by the parties is held in their joint names, the percentage of ownership of such an asset will be controlled by the provisions of this article, and the taking of title in their joint names may not be interpreted to mean that each party has an undivided 50 percent ownership interest in jointly acquired assets. If legal title cannot be obtained in the parties' joint names with respect to a jointly acquired asset, the parties agree to execute a memorandum stipulating that the asset was jointly acquired by the parties. Jointly acquired property may not be deemed to be community property but instead will constitute each party's separate property in proportion to that party's contribution to the purchase price; provided, however, that if there are no records verifying the amount of each party's contribution toward the purchase of an asset, each party will own an undivided 50 percent interest in that asset.

## Article 8

### Taxes

#### 8.1    Tax Liability

The parties agree to execute separate income tax returns during their marriage unless they agree that it is to their mutual advantage to file a joint tax return for any year.

For each year of the parties' marriage, PACO must report all of his separate-property income. In calculating PACO's separate-property tax liability, he is entitled to use all withholding, estimated tax payments, exemptions, deductions, charitable contributions, and tax credits (sometimes collectively called "adjustments") that are solely attributable to his separate-property estate and income. PACO is further entitled to use all current and prior year carryforwards (as well as all carryforwards arising in the future), including but not limited to net operating losses, passive losses, suspended losses, long-term capital losses, and short-term capital losses (sometimes collectively called "carryforwards") that are strictly associated with his separate-property estate and income. The income tax liability arising from PACO's separate

11

**Confidential - Attorneys' Eyes Only**

**URE_001078**

property is the sole liability of PACO, who agrees to fully discharge that tax liability, including penalties and interest, if any, out of his separate-property estate. PACO further agrees to indemnify and hold STEPHANIE and her separate property harmless from (and PACO releases STEPHANIE and her property from) all such tax liability, including penalties and interest, if any, together with all tax liens of every kind and character that might hereafter arise from the filing of his separate return or his failure to file necessary or proper returns or to pay the required taxes with respect to his separate-property taxable income.

For each year of the parties' marriage, STEPHANIE must report all of her separate-property income. In calculating STEPHANIE's separate-property tax liability, she is entitled to use all withholding, estimated tax payments, exemptions, deductions, charitable contributions, and tax credits (sometimes collectively called "adjustments") that are solely attributable to her separate-property estate and income. STEPHANIE is further entitled to use all current and prior year carryforwards (as well as all carryforwards arising in the future), including but not limited to net operating losses, passive losses, suspended losses, long-term capital losses, and short-term capital losses (sometimes collectively called "carryforwards") that are strictly associated with her separate-property estate and income. The income tax liability arising from STEPHANIE's separate property is the sole liability of STEPHANIE, who agrees to fully discharge that tax liability, including penalties and interest, if any, out of her separate-property estate. STEPHANIE further agrees to indemnify and hold PACO and his separate property harmless from (and STEPHANIE releases PACO and his property from) all such tax liability, including penalties and interest, if any, together with all tax liens of every kind and character that might hereafter arise from the filing of her separate return or her failure to file necessary or proper returns or to pay the required taxes with respect to her separate-property taxable income.

Each party is solely obligated to pay, from his or her separate-property estate, all estimated tax payments, if any, associated with his or her separate-property tax liability that are required to be paid for all taxable years that the parties are married.

All tax refunds that may be received in the future are the sole and separate property of the party whose separate-property estate generated the refund.

### 8.2    Joint Tax Returns

Notwithstanding the provisions of section 8.1 above and the intent and desire of the parties to file separate tax returns and to retain the wholly separate character of their respective separate properties, the parties acknowledge that the Internal Revenue Code, as amended, and the regulations thereunder, and similar codes and regulations of other states in certain instances provide, or may provide in the future, savings in taxes for married couples filing joint returns. If that is the case, the parties may file joint returns, but their election to file joint tax returns for any year of their marriage does not constitute a waiver of any provision of this agreement. At the option of either party, a party may request individual calculations to determine the pro rata share of any tax liability or tax refund as between each party's separate-property estate and the community-property estate in accordance with section 8.1 above.

12

Article 9

Dissolution of Marriage by Court Order

### 9.1    Property to PACO

If either party files any proceeding for divorce, annulment, or to declare their marriage void (a "dissolution proceeding"), STEPHANIE agrees that PACO will be awarded all his separate property, including all property described in this agreement as being the separate property of PACO. STEPHANIE agrees to release all interests or claims she may have in PACO's separate property. STEPHANIE further agrees to execute any documents necessary to set aside and confirm to PACO his separate property and to release any and all claims that STEPHANIE might have in and to PACO's separate property.

### 9.2    Property to STEPHANIE

In the event of a dissolution proceeding between the parties, PACO agrees that STEPHANIE will be awarded all her separate property, including all property described in this agreement as being the separate property of STEPHANIE. PACO agrees to release all interests or claims he may have in STEPHANIE's separate property. PACO further agrees to execute any documents necessary to set aside and confirm to STEPHANIE her separate property and to release any and all claims that PACO might have in and to STEPHANIE's separate property.

### 9.3    Liabilities to PACO

In the event of a dissolution proceeding between the parties, PACO agrees to be responsible for and pay all liabilities and obligations associated with his separate property, including all property described in this agreement as being the separate property of PACO. PACO further agrees to indemnify and hold STEPHANIE and her property harmless from all liabilities associated with PACO's separate property.

### 9.4    Liabilities to STEPHANIE

In the event of a dissolution proceeding between the parties, STEPHANIE agrees to be responsible for and pay all liabilities and obligations associated with her separate property, including all property described in this agreement as being the separate property of STEPHANIE. STEPHANIE further agrees to indemnify and hold PACO and his property harmless from all liabilities associated with STEPHANIE's separate property.

### 9.5    Waiver of Temporary Spousal Support, Spousal Maintenance, and Alimony

Each party waives any right that may exist under law to seek or obtain temporary spousal support, spousal maintenance, or alimony from the other party.

13

9.6    *Waiver of Right to Occupy Separate-Property Residence*

In the event of the filing of a dissolution proceeding, and in the event the parties' marital homestead is owned by one party as his or her separate property, the nonowner spouse agrees to waive all right he or she may have to continue residing in the marital homestead, both during the pendency of the dissolution proceeding and following the dissolution of the parties' marriage. In that event, the nonowning spouse agrees to vacate the marital homestead no later than 60 days following his or her receipt of notice of the filing of the dissolution proceeding.

9.7    *Release and Waiver*

If either party files a dissolution proceeding, neither party may request the court to divide the property of either or both parties in a manner contrary to the terms of this agreement.

Each party relinquishes, disclaims, and waives all rights, title, and interest that he or she may have to seek a division of property and liabilities in a dissolution proceeding contrary to what is provided for in this agreement.

9.8    *Division of Community Estate*

If the parties' marriage is dissolved by court order, all community property acquired during the marriage, if any community property arises despite the parties' intent to the contrary, must be equally divided between the parties according to the existing fair market value of each asset. If the parties cannot agree on the fair market value, the fair market value will be determined by appraisals. The division of the community property may be made by distributing the entire interest of certain properties to one party, with an equalizing distribution of the properties or funds to the other party.

9.9    *Attorney's Fees*

During the pendency of any dissolution proceeding, neither party may be required to pay interim attorney's fees, costs, or other expenses to the other party or the other party's attorney. Each party further agrees to pay his or her own attorney's fees, costs, and other expenses on final hearing of any dissolution proceeding.

Article 10

Dissolution of Marriage by Death

10.1    *PACO's Acceptance of STEPHANIE's Will and Waivers to Be Signed on Death of STEPHANIE*

PACO agrees to accept the provisions of any last will and testament and codicils that may be in effect at the time of STEPHANIE's death in full discharge, settlement, and satisfaction of any and all right, title, and interest that he, as STEPHANIE's husband, might otherwise acquire in her estate and property.

14

Confidential - Attorneys' Eyes Only

Unless designated as a named beneficiary under a written instrument, PACO waives and releases to STEPHANIE, her executors, administrators, or assigns, any and all rights of election given to him as the husband of STEPHANIE, or through him to his heirs, to take against her last will and testament under any statutes, now or hereafter in force, in Texas or any other state or foreign nation in which STEPHANIE may have property at the time of her death.

If the marriage of the parties is dissolved by the death of STEPHANIE, PACO agrees and hereby binds his personal representatives and heirs to agree to release and convey to STEPHANIE's estate any interest he may then have or claim to have in the separate property of STEPHANIE, including any property described in this agreement as being the separate property of STEPHANIE or as belonging to STEPHANIE's separate estate, other than any benefit conferred on PACO in article 11 of this agreement. PACO agrees to execute on request all instruments of release or conveyance that are necessary to give effect to this agreement. STEPHANIE hereby binds her personal representatives and heirs to release and convey to PACO all of the interest, if any, that STEPHANIE or her estate may have in the then separate property of PACO and in all the property described in this agreement as being the separate property of PACO or as belonging to PACO's separate estate unless otherwise provided for in article 11 of this agreement.

### 10.2 STEPHANIE's Acceptance of PACO's Will and Waivers to Be Signed on Death of PACO

STEPHANIE agrees to accept the provisions of any last will and testament and codicils that may be in effect at the time of PACO's death in full discharge, settlement, and satisfaction of any and all right, title, and interest that she, as PACO's wife, might otherwise acquire in his estate and property.

Unless designated as a named beneficiary under a written instrument, STEPHANIE waives and releases to PACO, his executors, administrators, or assigns, any and all rights of election given to her as the wife of PACO, or through her to her heirs, to take against his last will and testament under any statutes, now or hereafter in force, in Texas or any other state or foreign nation in which PACO may have property at the time of his death.

If the marriage of the parties is dissolved by the death of PACO, STEPHANIE agrees and hereby binds her personal representatives and heirs to agree to release and convey to PACO's estate any interest she may then have or claim to have in the separate property of PACO, including any property described in this agreement as being the separate property of PACO or as belonging to PACO's separate estate, other than any benefit conferred on STEPHANIE in article 11 of this agreement. STEPHANIE agrees to execute on request all instruments of release or conveyance that are necessary to give effect to this agreement. PACO hereby binds his personal representatives and heirs to release and convey to STEPHANIE all of the interest, if any, that PACO or his estate may have in the then separate property of STEPHANIE and in all the property described in this agreement as being the separate property of STEPHANIE or as belonging to STEPHANIE's separate estate unless otherwise provided for in article 11 of this agreement.

15

*10.3    Family Allowance to Surviving Spouse*

The parties agree that the surviving spouse will not have the right to petition the court for the payment of a family allowance for the support of the surviving spouse following the death of a party. In that regard, the surviving spouse hereby waives and releases to the deceased party and his or her executors, administrators, or assigns any and all rights to a family allowance now or hereafter in force in Texas or any other state or foreign jurisdiction.

Article 11

Retirement Benefits

*11.1    Waiver of Retirement Benefits by PACO*

Unless named by a written instrument as a beneficiary by STEPHANIE, PACO waives all right, title, and interest, if any, that he may acquire by virtue of his marriage to STEPHANIE in all of STEPHANIE's retirement benefits and disability benefits, whether lump sum or installment, any profit-sharing interests, and any other employee benefits arising out of STEPHANIE's past, present, or future employment. PACO acknowledges that this waiver includes all rights that he may have to receive benefits or payments from any 401(k) plan, SEP account, individual retirement account, profit-sharing plan, or any other type of employee benefit plan that STEPHANIE has or may have in the future. PACO further waives all rights he may have, after the marriage of the parties, to participate in any decisions concerning the designation of beneficiaries or election of benefits or any other types of decisions to be made by STEPHANIE under the terms of her current or future employee benefit plan or plans. PACO agrees to execute the Property Agreement between Spouses within five days of being presented that document in order to comply with all requests by STEPHANIE involving STEPHANIE's designation of beneficiaries in connection with her current or future employee benefit plan or plans of any type. PACO further agrees to consent in writing to, and accept, STEPHANIE's designation of beneficiary with respect to the plan or plans and to sign any spousal consent that might be requested or required by STEPHANIE at any time with respect to any such plan or plans, even if the consent does not provide for the payment of survivor benefits on STEPHANIE's death.

*11.2    Waiver of Retirement Benefits by STEPHANIE*

Unless named by a written instrument as a beneficiary by PACO, STEPHANIE waives all right, title, and interest, if any, that she may acquire by virtue of her marriage to PACO in all of PACO's retirement benefits and disability benefits, whether lump sum or installment, any profit-sharing interests, and any other employee benefits arising out of PACO's past, present, or future employment. STEPHANIE acknowledges that this waiver includes all rights that she may have to receive benefits or payments from any 401(k) plan, SEP account, individual retirement account, profit-sharing plan, or any other type of employee benefit plan that PACO has or may have in the future. STEPHANIE further waives all rights she may have, after the marriage of the parties, to participate in any decisions concerning the designation of beneficiaries or election of benefits or any other types of decisions to be made by PACO under the terms of his current or

16

future employee benefit plan or plans. STEPHANIE agrees to execute the Property Agreement between Spouses within five days of being presented that document in order to comply with all requests by PACO involving PACO's designation of beneficiaries in connection with his current or future employee benefit plan or plans of any type. STEPHANIE further agrees to consent in writing to, and accept, PACO's designation of beneficiary with respect to the plan or plans and to sign any spousal consent that might be requested or required by PACO at any time with respect to any such plan or plans, even if the consent does not provide for the payment of survivor benefits on PACO's death.

Article 12

Gifts

### 12.1    Gifts

The parties acknowledge that during their marriage each party may, from time to time, make gifts of property to the other party. These interspousal gifts may be made on a special occasion, such as a birthday or anniversary, or on any other occasion a party may choose. The parties recognize that frequently claims of "gifts" are alleged in the context of a dissolution proceeding. To remove any uncertainty about the issue of interspousal gifts, the parties agree that:

      1.      Gifts of wearing apparel, jewelry, and athletic equipment may be established by parol testimony if the item or property is customarily used and enjoyed exclusively by the party claiming it as a gift to him or her;

      2.      Gifts of other items of personal property not covered by item 1. above, such as furnishings, artwork, cash, and collections, must be established by clear and convincing evidence; and

      3.      Any property that is held by title, as in a deed, in a certificate, or by account name, may not be effectively transferred to the party claiming it as a gift unless, in fact, the deed, certificate, or account is transferred by name to the party claiming the gift.

### 12.2    Gift Tax Consequences

Each party retains the right to make gifts of his or her separate property without regard to blood or other relationship of the donee. Conditional on any such gift being made from the separate property of a party, the party making the gift may deem the other party as the donor of one-half of the gift for federal gift tax purposes, if allowable under the relevant law, but without personal liability to the deemed donor. If the deemed donor is held responsible for the payment of federal gift tax, the actual donor must indemnify and hold harmless the deemed donor and his or her property from the liability and must reimburse the deemed donor the amount of the tax, including all penalties and interest, if any, within ten days after the deemed donor has paid any such taxes, penalties, or interest. Notwithstanding any of the provisions set forth in this section 12.2 to the contrary, the parties agree that any gift that would utilize some or all of the deemed donor's unified lifetime credit or annual gift tax exclusion amount must be consented to in

17

writing by the deemed donor prior to the making of the gift or the timely filing of the applicable gift tax return with the Treasury Department.

Article 13

Independent Conveyances or Bequests

13.1    *Independent Conveyances or Bequests*

If either party voluntarily conveys to the other party an interest in his or her separate property that is declared by law, or by this agreement, to be the separate property of one party, either by will, survivorship agreement, or instrument of conveyance or by document of title signed by the transferring party, the provisions of that will, survivorship agreement, instrument of conveyance, or document of title control over the provisions of this agreement to the extent of any conflict between the two documents regarding such property other than property that is personal to the other party. Absent such a will, survivorship agreement, instrument of conveyance, or document of title expressly conveying such property, all properties remain in the ownership of the party owning or designated as owning the property as his or her separate property.

Nothing in this agreement may be construed as prohibiting one party from giving property to the other party by will, survivorship agreement, instrument of conveyance, document of title, or other written instrument between the parties.

Article 14

General Agreements

14.1    *General Agreements*

Except as specifically set forth in this agreement to the contrary, PACO and STEPHANIE agree to the following:

1.    That the separate property of each party, and the property described or created in this agreement as being the separate property of or belonging to the separate estate of each party, will be free from any claim of the other party that may arise as a result of or during the marriage.

2.    That any money used for the benefit of the other party will be presumed to be a gift to the other party, as contrasted with a payment for which reimbursement or repayment is later expected, unless the parties agree otherwise in writing.

3.    That this agreement applies during the lifetime of both parties, including on dissolution of their marriage by court order, as well as on the death of either or both parties.

4.    That this agreement extends to any rights, whether choate or inchoate, that may arise under the laws of any jurisdiction.

18

Confidential - Attorneys' Eyes Only

URE_001085

Article 15

Reimbursement

### 15.1   *No Reimbursement Claims*

PACO waives the right to assert any claim for reimbursement that he might have in the future on behalf of or against the community estate. PACO further waives the right to assert any claim for reimbursement that he might have in the future against the separate estate of STEPHANIE.

STEPHANIE waives the right to assert any claim for reimbursement that she might have in the future on behalf of or against the community estate. STEPHANIE further waives the right to assert any claim for reimbursement that she might have in the future against the separate estate of PACO.

Article 16

Arbitration

### 16.1   *Arbitration*

The parties stipulate and agree that, in the event of a dissolution of the marriage by divorce, the parties will resolve their divorce through binding arbitration.

The provisions for binding arbitration must be in accordance with Texas arbitration law, including but not limited to sections 6.601 and 153.0071 of the Texas Family Code.

The parties agree to submit to binding arbitration any dispute or controversy regarding the validity, interpretation, or enforceability of this agreement, as well as all issues involving its enforcement in connection with a dissolution proceeding between the parties. Each party expressly waives any right to trial by a court or trial by a jury. If a dissolution proceeding or declaratory judgment proceeding is filed in Texas, the arbitrator appointed under this agreement will simultaneously be designated as special master under the Texas Rules of Civil Procedure, and the parties agree to jointly apply to the court for any orders that are necessary to vest the arbitrator with all powers and authority of a special master under the rules.

The parties agree to appoint one arbitrator, whose decisions will be binding in all respects. Any arbitrator appointed by the parties must be an attorney who has undergone arbitration training conducted by the American Bar Association or the American Academy of Matrimonial Lawyers and is in good standing with the State Bar of Texas. The arbitrator must also be board certified in family law by the Texas Board of Legal Specialization. The first party requesting arbitration must designate the name of an arbitrator in the request. The other party must then designate the name of an arbitrator. If the parties cannot agree on an arbitrator within fourteen days after either party's written request for arbitration, the two designees must select a qualified arbitrator, who will be designated the sole arbitrator of the dispute. If the parties cannot agree on the ground rules and procedures to be followed during the arbitration proceedings, the

19

arbitrator shall have the sole authority to establish the ground rules and procedures to be followed during the arbitration proceeding. The parties agree to attend the arbitration on the date and at the time and place set by the arbitrator. The cost of arbitration must be borne as the arbitrator directs. The award of the arbitrator will be binding and conclusive on the parties, and a judgment setting forth the arbitration award may be entered in any court of competent jurisdiction.

Article 17

General Provisions

### 17.1    When Effective

The parties are executing this agreement before their marriage, to be effective on the date of their marriage, and it will exist through the whole of their marriage and thereafter, until it is fully performed, amended, or revoked. This agreement is void following its execution if the parties are not married within ninety days.

### 17.2    Execution of Documents

Each party agrees to cooperate fully with the other in performing all acts and in executing, acknowledging, and delivering all instruments and documents required to accomplish the intent of this agreement.

### 17.3    Presumption of Separate Property

Any property held in PACO's individual name is presumed to be the separate property of PACO. Any property held in STEPHANIE's individual name is presumed to be the separate property of STEPHANIE. Any property or liability inadvertently omitted from the schedules attached to this agreement is the separate property or liability of the party to whom it belongs or by whom it was incurred.

### 17.4    Enforceability

This agreement may be enforced by suit in law or equity by either of the parties or by their heirs, executors, attorneys, or assigns. Each party agrees that, by signing this agreement and accepting any benefit whatsoever under it, he or she is estopped and barred from making any claim of any kind at any time to any separate property or the separate estate of the other party or to any property described in this agreement as being the separate property of the other party. Each party waives his or her right to make claims to any separate property of the other party or to any property designated as belonging to the separate estate of the other party, whether the property is acquired before or after this agreement is signed.

### 17.5    Place of Performance; Governing Law; Application

All rights, duties, and obligations under this agreement are payable and enforceable in Travis County, Texas.

20

Confidential - Attorneys' Eyes Only

Texas law in effect at the date of the parties' marriage governs the construction, interpretation, and enforcement of this agreement to the maximum extent permitted by law.

The parties expressly intend and agree that this agreement applies to and governs all real and personal property, wherever situated, owned by either party at the time of marriage or acquired by either party after marriage, regardless of any change of domicile of the parties or the location of the real estate. If one or both of the parties ever becomes domiciled in a jurisdiction other than Texas, the status of all property thereafter acquired by that party must be controlled to the maximum extent by the terms of this agreement interpreted under Texas law in effect at the date of the parties' marriage. The desire of the parties that each preserve his or her separate property or separate estate under Texas law and keep it free from the claims of the other party corresponds to their desire that each party should have and hold the property free from the claims of the other party under the laws of all other jurisdictions, even if the other jurisdictions do not recognize community property but instead speak of "marital property" and "nonmarital property" or like terms. For any property of either party whose ownership is not controlled by the marital property laws of Texas, when this agreement speaks of property as being the separate property of a party, reference is made to property acquired in such a manner that it would meet the definition of separate property under the Texas Constitution or the Texas Family Code, as amended.

### 17.6   *Successors*

This agreement binds and inures to the benefit of the parties and their respective legatees, devisees, heirs, executors, legal and personal representatives, assigns, transferees, and successors in interest.

### 17.7   *Waiver of Breach or Term*

The waiver of any breach of any provision of this agreement does not waive any other breach of that or any other provision. Waiver of any term of this agreement may be accomplished only concerning future performance and only by a written instrument signed by both parties expressly stating the provisions waived.

### 17.8   *Amendment or Modification*

This agreement may be waived, abandoned, modified, amended, discharged, or terminated only by a written instrument signed by both parties that specifically identifies the waiver, abandonment, modification, amendment, discharge, or termination.

### 17.9   *Attorney's Fees and Expenses for Enforcement*

If either party brings an action or other proceeding to enforce this agreement or to enforce any judgment, decree, or order made by a court in connection with this agreement, the prevailing party will be entitled to recover reasonable attorney's fees and other necessary costs from the other party. If either party files a declaratory judgment proceeding to determine the enforceability of this agreement, neither party will be entitled to an award of attorney's fees unless a party successfully challenges the validity of this agreement, in which event the court will have the authority to award attorney's fees. If either party seeks to invalidate some or all of

21

this agreement or the related Property Agreement between Spouses or seeks to recover property in a manner at variance with this agreement or the related Property Agreement between Spouses, the successful party will be entitled to recover reasonable attorney's fees and other necessary costs from the other party.

The parties stipulate and agree that the paragraph immediately above does not apply to any suit exclusively regarding conservatorship of a child of the parties.

### 17.10   Exclusive Remedy for Nonmonetary Breach

Except as expressly provided otherwise in this agreement, the exclusive judicial remedy of either party against the other for failure to perform any nonmonetary duty or obligation under any provision of this agreement is judicial enforcement by judgment for specific performance or mandatory injunction and writ of execution to compel performance, plus reasonable attorney's fees. Neither party is entitled to recover any damages, actual or consequential, for any nonmonetary breach. No failure of either party to perform any nonmonetary duty or obligation under this agreement diminishes or impairs the full effectiveness of its provisions.

### 17.11   Partial Invalidity

If any provision of this agreement is for any reason found to be unenforceable, all other provisions nonetheless remain enforceable.

### 17.12   Assignment Prohibited

This agreement is personal to the parties, and neither party may assign or delegate any of his or her rights or obligations under it.

### 17.13   Entire Agreement

This instrument contains the parties' entire agreement on the subject matter of the agreement. This agreement replaces any earlier agreements or understandings, whether written or oral, and there are no contemporaneous written or oral agreements that are not fully expressed in it.

### 17.14   Titles and Captions

Article headings, titles, and captions contained in this agreement are merely for reference and do not define, limit, extend, or describe the scope of this agreement or any provision.

### 17.15   No Construction against Draftsman

No provision of this agreement may be interpreted for or against any party because the party or his or her legal representative drafted the provision.

Confidential - Attorneys' Eyes Only                    URE_001089

### 17.16  Representation

The attorney representing PACO is David A. Kazen. The attorney representing STEPHANIE is Michael Hiller. PACO has not received any legal, financial, or other kind of advice from STEPHANIE or from her attorney, Michael Hiller, in connection with the advisability or nonadvisability of entering into this agreement. STEPHANIE has not received any legal, financial, or other kind of advice from PACO or from his attorney, David A. Kazen, in connection with the advisability or nonadvisability of entering into this agreement. PACO is relying on his own judgment and the advice of his attorney in entering into this agreement. STEPHANIE is relying on her own judgment and the advice of her attorney in entering into this agreement.

### 17.17  Incorporation of Schedules

All schedules to this agreement are fully incorporated into this agreement as completely as if they were copied verbatim in the body of it.

### 17.18  Nondisqualification

If any dispute arises out of this agreement, whether by arbitration or litigation, each party waives any claim of disqualification against representation of the other party by the attorneys who participated in negotiating and drafting this agreement.

### 17.19  Suits Affecting the Parent-Child Relationship

Nothing in this agreement affects either party's rights in any suit affecting the parent-child relationship.

### 17.20  Multiple Originals

This agreement is executed in multiple originals. This agreement is signed after the execution of the Waiver of Disclosure of Financial Information.

**Confidential - Attorneys' Eyes Only**                                    **URE_001090**

Article 18

Representations and Warranties

WARNING

EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT HE OR SHE IS PERMANENTLY SURRENDERING RIGHTS AND CLAIMS HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW AND UNDER THE LAW OF OTHER JURISDICTIONS.

*18.1    Representations and Warranties of PACO*

My name is PACO. I represent and warrant that:

1.    I have carefully read each and every page of this agreement and all schedules attached or referred to, in their entirety.

2.    I am fully and completely informed by my attorney about the law relating to the subject matter of this agreement and of the Property Agreement between Spouses and about the spousal rights and liabilities of both parties on entering into marriage.

3.    I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY AFTER RECEIVING THE ADVICE OF INDEPENDENT COUNSEL.

4.    I have given careful and mature thought to the making of this agreement.

5.    I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect.

6.    I have investigated the property and financial obligations of STEPHANIE sufficiently to satisfy any questions I have in that regard, and I expressly waive any right to disclosure of the property and financial obligations of STEPHANIE beyond the disclosures provided.

7.    I am not relying on any fiduciary obligations owed by one party to the other party or on any duty of disclosure founded on a confidential or other relationship between the parties. Furthermore, I am not relying on any legal or accounting advice or representation of fact or law provided by STEPHANIE or anyone acting on her behalf.

8.    I fully understand that, by signing this agreement and accepting any benefit whatsoever under it, I will be estopped from making any claim of any kind at any time to any separate property or the separate estate of STEPHANIE, except as expressly provided for in this agreement.

9.    I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering rights to income and property I would otherwise have under Texas law.

24

10.    I am executing this agreement with intent to be bound fully by all its terms.

_____

Frank Richard Ahlgren, III.

25

Confidential - Attorneys' Eyes Only

URE_001092

18.2    *Representations and Warranties of STEPHANIE*

My name is STEPHANIE. I represent and warrant that:

1.    I have carefully read each and every page of this agreement and all schedules attached or referred to, in their entirety.

2.    I am fully and completely informed by my attorney about the law relating to the subject matter of this agreement and of the Property Agreement between Spouses and about the spousal rights and liabilities of both parties on entering into marriage.

3.    I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY AFTER RECEIVING THE ADVICE OF INDEPENDENT COUNSEL.

4.    I have given careful and mature thought to the making of this agreement.

5.    I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect.

6.    I have investigated the property and financial obligations of PACO sufficiently to satisfy any questions I have in that regard, and I expressly waive any right to disclosure of the property and financial obligations of PACO beyond the disclosures provided.

7.    I am not relying on any fiduciary obligations owed by one party to the other party or on any duty of disclosure founded on a confidential or other relationship between the parties. Furthermore, I am not relying on any legal or accounting advice or representation of fact or law provided by PACO or anyone acting on his behalf.

8.    I fully understand that, by signing this agreement and accepting any benefit whatsoever under it, I will be estopped from making any claim of any kind at any time to any separate property or the separate estate of PACO, except as expressly provided for in this agreement.

9.    I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering rights to income and property I would otherwise have under Texas law.

10.    I am executing this agreement with intent to be bound fully by all its terms.

Stephanie **Marie** Ure

26

EXECUTED in multiple originals on the dates and at the times of the acknowledgments shown below.

STATE OF TEXAS                  )
COUNTY OF   Travis              )

This instrument was acknowledged before me at _____3.19_____ P.M. on November 12, 2021 _____ by Frank Richard Ahlgren, III.

_____
Notary Public, State of Texas

I, the notary public whose signature appears above, certify that I am not an attorney representing either party to this agreement.

_____


STATE OF TEXAS                  )
COUNTY OF   Travis              )

This instrument was acknowledged before me at _____3.19_____ P.M. on November 12, 2021 _____ by Stephanie Marie Ure.

_____
Notary Public, State of Texas

I, the notary public whose signature appears above, certify that I am not an attorney representing either party to this agreement.

_____



27

**Confidential - Attorneys' Eyes Only**

## Schedule A

To Premarital Agreement between PACO and STEPHANIE dated November 12, 2021.

### Property of PACO

1.      The business interest known as The Copernican, L.L.C., including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

2.      The following real property, commonly known as 2274 Morning Star Drive, Park City, Utah 84060, including but not limited to all rental income, sales proceeds, warranties, keys, house plans, service contracts, and utility deposits relating to it, and more particularly described as follows:

> Lot 13, Thaynes Canyon Subdivision No. 3, according to the official record in the Summit County Recorder's Office, Summit County, Utah

The property is owned by The Copernican, L.L.C.

3.      The following real property, commonly known as 4602 Rosedale, Austin, Travis County, Texas 78756, including but not limited to all rental income, sales proceeds, warranties, keys, house plans, service contracts, and utility deposits relating to it, and more particularly described as follows:

> Lot 2, Block 26, Melrose, Terrace, a subdivision in Travis County, Texas according to the map or plat thereof recorded in Volume 4, Page 11, Plat Records of Travis County, Texas

4.      The 2013 Ford F-150 automobile, vehicle identification number 1FTFW1ET1DFC14709, together with all prepaid insurance.

5.      The 2018 Chevrolet Suburban automobile, vehicle identification number 1GNSKHKC1JR130009, together with all prepaid insurance.

6.      All sums of cash in the possession of or subject to the control of PACO, together with all interest income, mutations, enhancements, and increases therefrom, including money on account in banks, savings institutions, or other financial institutions, which accounts stand in PACO's name or from which PACO has a right to withdraw funds or which are subject to PACO's control, including but not limited to money on account in the following banks, savings institutions, or other financial institutions:

> University Federal Credit Union Account, in the name of The Copernican LLC / Frank Richard Ahlgren, III., Checking and Savings Account #: XXXXX4860

28

**Confidential - Attorneys' Eyes Only**                                                                              URE_001095

▮▮▮▮▮▮▮▮▮▮ Account Name, in the name of Frank Richard Ahlgren, III., Checking and Savings Account #: XXXXXX8777

▮▮▮▮▮▮▮▮▮▮ in the name of Frank Richard Ahlgren, III., Checking and Savings Account #: XXXXX9656

▮▮▮▮▮▮▮▮▮▮ Checking account: XXX6719

▮▮▮▮▮▮▮▮▮▮ Account #: XXXXXXXX-XX0050

7.      All wearing apparel, jewelry, and other personal effects in the possession of or subject to the control of PACO or otherwise owned by him as of the date of the parties' marriage.

8.      All personal property, household furnishings, fixtures, artwork, antiques, china, silver, crystal, equipment, guns, and other household items currently in the possession of or subject to the control of PACO, as well as all other items otherwise owned by him as of the date of the parties' marriage.

9.      All policies of life insurance, including all cash values and any increases, mutations, enhancements, interest income, and dividend income received therefrom, insuring the life of PACO.

10.     All other property and property rights set aside to PACO under the terms of this Premarital Agreement.

_____
Frank Richard Ahlgren, III.

29

## Schedule B

To Premarital Agreement between PACO and STEPHANIE dated November 12, 2021.

## Property of STEPHANIE

  1. The following real property, commonly known as 6641 North 2200 West, D205, Park City Utah 84098, including but not limited to all rental income, sales proceeds, warranties, keys, house plans, service contracts, and utility deposits relating to it, and more particularly described as follows:

> BUILDING D UNIT 205 CRESTVIEW CONDOMINIUMS PHASE II ACCORDING TO THE OFFICIAL PLAT ON FILE IN THE SUMMIT COUNTY RECORDERS OFFICE CONT 715 SQ FT TOGETHER WITH AN UND 0.0070% INT IN THE COMMON AREA.

  2. All sums of cash in the possession of or subject to the control of STEPHANIE, together with all interest income, mutations, enhancements, and increases therefrom, including money on account in banks, savings institutions, or other financial institutions, which accounts stand in STEPHANIE's name or from which STEPHANIE has a right to withdraw funds or which are subject to STEPHANIE's control, including but not limited to money on account in the following banks, savings institutions, or other financial institutions:

Wells Fargo Bank, NA, Account No. XXXXX3105;

Wells Fargo Bank, NA, Account No. XXXXX7939;



Account No. XXXXX4141;

Account No. XXXXX5376;

Account No. XXXXX0973;

Account No. XXXXX8043

Account No. XXXXX1090;

Account No. XXXXX2690;

Account No. XXXXX356-S0050;

Account No. XXXXX356-S0001; and

Account No. XXXX9088.

30

3. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases, mutations, enhancements, interest income, and the proceeds therefrom, and all other rights related to any Keogh plan, profit-sharing plan, retirement plan, pension plan, annuity, money market investment account, individual retirement account, or like benefit program existing by reason of STEPHANIE's past, present, or future employment, including but not limited to:



IRA Brokerage Account No. XXXXX0965;

IRA Brokerage Account No. XXXXX8604;

Brokerage Account No. XXXXX1696;

4. All wearing apparel, jewelry, and other personal effects in the possession of or subject to the control of STEPHANIE or otherwise owned by her as of the date of the parties' marriage.

5. All personal property, household furnishings, fixtures, artwork, antiques, china, silver, crystal, equipment, guns, and other household items currently in the possession of or subject to the control of STEPHANIE, as well as all other items otherwise owned by her as of the date of the parties' marriage.

6. All policies of life insurance, including all cash values and any increases, mutations, enhancements, interest income, and dividend income received therefrom, insuring the life of STEPHANIE.

7. The business interest known as Advanced Digital Management, L.L.C., including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business. Advanced Digital Management, L.L.C. owns the following financial accounts:

Account No. XXXXX5-S0050; and

Account No. XXXXX5-S0051.

8. All other property and property rights set aside to STEPHANIE under the terms of this Premarital Agreement.

Stephanie Marie Ure

31

## Schedule C

To Premarital Agreement between PACO and STEPHANIE dated November 12, 2021.

### Liabilities of PACO

1.      Child support payable for the benefit of Sofie Ahlgren in the monthly amount of 1,400.00 in Cause No. D-1-FM-18-006890; *In the Interest of S.E.A. A Child*, In the 201st Judicial District Court of Travis County, Texas;

2.      Judgment against Frank Ahlgren, III in Cause No. D-1-GN-20-001472 *styled Frank Ahlgren, Jr., et. al. and Frank Ahlgren III, et. al.*; In the 261st Judicial District Court of Travis County, Texas which states that plaintiffs have a judgment against defendant Paco Ahlgren and defendant Copernican, jointly and severally, shall be as follows: actual damages in the sum of \$29,329,378.00; plus prejudgment interest on that sum as set forth above; plus attorney's fees of \$1,892,743.20 as well as the attorney's fees that may be incurred during the appeal as set forth above; plus costs of court; plus post-judgment interest on the sum total each of the foregoing, at an annual rate of five percent (5.0%), compounded annually, from the date this judgment is rendered until paid.

3.      All indebtedness due on any separate-property asset listed in Schedule A of this agreement, unless specifically provided herein to the contrary.

4.      All obligations of PACO specifically referred to in article 4 of this agreement.

5.      All ad valorem taxes, personal property taxes, and assessments or other charges due or to become due in connection with any asset owned by PACO as his separate property.

6.      The balance due, including principal and interest, on all credit cards and charge accounts in PACO's name that are due and payable as of the date of his execution of this agreement, together with all amounts that may be due and payable following his execution of this agreement.

7.      All contingent liability of PACO's that may occur as a result of his business interests in The Copernican, L.L.C.

8.      All attorney's fees and other costs incurred by PACO in connection with the preparation of this Premarital Agreement.

9.      All foreign, federal, and state income tax liabilities, including all penalties and interest, if any, of PACO for the year 2021 through the date of marriage and all prior years.

Frank Richard Ahlgren, III.

32

## Schedule D

To Premarital Agreement between PACO and STEPHANIE dated November 12, 2021.

## Liabilities of STEPHANIE

1.      All indebtedness due on any separate-property asset listed in Schedule B of this agreement, unless specifically provided herein to the contrary.

2.      All obligations of STEPHANIE specifically referred to in article 4 and Schedule E of this agreement.

3.      All ad valorem taxes, personal property taxes, and assessments or other charges due or to become due in connection with any asset owned by STEPHANIE as her separate property.

4.      The balance due, including principal and interest, on all credit cards and charge accounts in STEPHANIE's name that are due and payable as of the date of her execution of this agreement, together with all amounts that may be due and payable following her execution of this agreement.

5.      All contingent liability of STEPHANIE's that may occur as a result of her business interest in Advanced Digital Management, L.L.C.

6.      All attorney's fees and other costs incurred by STEPHANIE in connection with the preparation of this Premarital Agreement.

7.      All foreign, federal, and state income tax liabilities, including all penalties and interest, if any, of STEPHANIE for the year 2021 through the date of marriage and all prior years.

Stephanie Marie Ure

33

URE_001100

**Schedule E**

**Property Agreement between Spouses**

The parties to this Property Agreement between Spouses are Frank Richard Ahlgren, III. and Stephanie Marie Ure, the spouses. This agreement is entered into in accordance with the Premarital Agreement previously executed by the spouses.

The spouses stipulate as follows:

1.    Frank Richard Ahlgren, III. and Stephanie Marie Ure were married on _____.

2.    The spouses presently own as separate property the real and/or personal property described in Schedules A and B of the Premarital Agreement. Schedule A contains a description of the property owned at the time of marriage by Frank Richard Ahlgren, III. as his sole and separate property, and Schedule C contains a description of his debts and obligations. Schedule B contains a description of the property owned at the time of marriage by Stephanie Marie Ure as her sole and separate property, and Schedule D contains a description of her debts and obligations.

3.    The spouses desire to ratify their Premarital Agreement and to provide by this agreement (a) that all income arising from Frank Richard Ahlgren, III.'s separate property will be his separate property and remain under his ownership, management, and control, both during this marriage and on its dissolution by death or court order, unless such separate property is otherwise voluntarily transferred from Frank Richard Ahlgren, III. to Stephanie Marie Ure by will or other written instrument; and (b) that all income arising from Stephanie Marie Ure's separate property will be her separate property and remain under her ownership, management, and control, both during this marriage and on its dissolution by death or court order, unless such separate property is otherwise voluntarily transferred from Stephanie Marie Ure to Frank Richard Ahlgren, III. by will or other written instrument.

In consideration of the mutual covenants contained in this agreement and other good and valuable consideration, receipt of which is hereby acknowledged, and in accordance with the Premarital Agreement previously entered into by the spouses, Frank Richard Ahlgren, III. and Stephanie Marie Ure agree as follows:

Article 1
*Income Arising from Separate Property of Frank Richard Ahlgren, III.*

All future earnings and income arising during marriage from the separate property of Frank Richard Ahlgren, III., as well as all subsequent income arising from the reinvestment of that income, is the separate property of Frank Richard Ahlgren, III. unless the parties specifically agree in writing to the contrary.

34

## Article 2
### *Income Arising from Separate Property of Stephanie Marie Ure*

All future earnings and income arising during marriage from the separate property of Stephanie Marie Ure, as well as all subsequent income arising from the reinvestment of that income, is the separate property of Stephanie Marie Ure unless all parties specifically agree in writing to the contrary.

## Article 3
### *Waiver of Retirement Benefits by Frank Richard Ahlgren, III.*

**3.1    Waiver by Frank Richard Ahlgren, III.**

Frank Richard Ahlgren, III. waives all right, title, and interest, if any, that he has or may have by virtue of his marriage to Stephanie Marie Ure in all of Stephanie Marie Ure's retirement benefits, whether lump sum or installment, arising out of Stephanie Marie Ure's past, present, or future employment. Frank Richard Ahlgren, III. acknowledges that this waiver includes all rights that he has or may have to receive any benefits or payments from Stephanie Marie Ure's 401(k) plan as well as any interest in Stephanie Marie Ure's individual retirement account. Frank Richard Ahlgren, III. further waives all rights he may have to participate in any decisions concerning the designation of beneficiaries or election of benefits or any other types of decisions to be made by Stephanie Marie Ure under the terms of her current or future employee benefit plan or plans. This waiver is effective whether the parties' marriage is terminated by death or by court order.

## Article 4
### *Waiver of Retirement Benefits by Stephanie Marie Ure*

**4.1    Waiver by Stephanie Marie Ure**

Stephanie Marie Ure waives all right, title, and interest, if any, that she has or may have by virtue of her marriage to Frank Richard Ahlgren, III. in all of Frank Richard Ahlgren, III.'s retirement benefits, whether lump sum or installment, arising out of Frank Richard Ahlgren, III.'s past, present, or future employment. Stephanie Marie Ure acknowledges that this waiver includes all rights that she has or may have to receive any benefits or payments from Frank Richard Ahlgren, III.'s 401(k) plan as well as any interest in Frank Richard Ahlgren, III.'s individual retirement account. Stephanie Marie Ure further waives all rights she may have to participate in any decisions concerning the designation of beneficiaries or election of benefits or any other types of decisions to be made by Frank Richard Ahlgren, III. under the terms of his current or future employee benefit plan or plans. This waiver is effective whether the parties' marriage is terminated by death or by court order.

## Article 5
### *Execution of Documents*

Each spouse agrees to cooperate fully with the other spouse in performing all acts and in

35

executing, acknowledging, and delivering any instruments or documents required to accomplish the intent of this agreement. The spouses further agree to execute all instruments or documents within 14 days of receipt from the other spouse.

Article 6
***Ratification of Premarital Agreement***

This agreement, as well as being a contract in its own right, is a ratification of the Premarital Agreement previously executed by the spouses before their marriage.

Article 7
***Representation***

The attorney representing Frank Richard Ahlgren, III. is David A. Kazen. The attorney representing Stephanie Marie Ure is Michael Hiller. Frank Richard Ahlgren, III. has not received any legal, financial, or other kind of advice from Stephanie Marie Ure or from her attorney, Michael Hiller, in connection with the advisability or nonadvisability of entering into this agreement. Stephanie Marie Ure has not received any legal, financial, or other kind of advice from Frank Richard Ahlgren, III. or from his attorney, David A. Kazen, in connection with the advisability or nonadvisability of entering into this agreement. Frank Richard Ahlgren, III. is relying on his own judgment and the advice of his attorney in entering into this agreement. Stephanie Marie Ure is relying on her own judgment and the advice of her attorney in entering into this agreement.

WARNING

EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT HE OR SHE IS PERMANENTLY SURRENDERING RIGHTS TO INCOME OR PROPERTY HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW AND THE LAW OF OTHER JURISDICTIONS.

EXECUTED in multiple originals on the dates of the acknowledgments shown below.

***Acknowledgment of Frank Richard Ahlgren, III.***

My name is Frank Richard Ahlgren, III. I acknowledge that:

1.     I have carefully read each and every page of this agreement and all schedules referred to, in their entirety.

2.     I am entering into this agreement freely and voluntarily after receiving the advice of independent legal counsel.

3.     I have given careful and mature thought to the making of this agreement.

4.     I completely understand the provisions of this agreement concerning its nature, subject matter, and legal effect.

36

5.      I am freely and voluntarily entering into this agreement and understand that by executing this agreement I may be adversely affecting my marital rights and property.

_____
Frank Richard Ahlgren, III.

**_Acknowledgment of Stephanie Marie Ure_**

My name is Stephanie Marie Ure. I acknowledge that:

1.      I have carefully read each and every page of this agreement and all schedules referred to, in their entirety.

2.      I am entering into this agreement freely and voluntarily after receiving the advice of independent legal counsel.

3.      I have given careful and mature thought to the making of this agreement.

4.      I completely understand the provisions of this agreement concerning its nature, subject matter, and legal effect.

5.      I am freely and voluntarily entering into this agreement and understand that by executing this agreement I may be adversely affecting my marital rights and property.

_____
Stephanie Marie Ure

37

**Confidential - Attorneys' Eyes Only**

**URE_001104**

STATE OF TEXAS                              )
COUNTY OF                                   )

    This instrument was acknowledged before me at _____ __.M. on _____ by Frank Richard Ahlgren, III.

_____
Notary Public, State of Texas

    I, the notary public whose signature appears above, certify that I am not an attorney representing either party to this agreement.

_____

STATE OF TEXAS                              )
COUNTY OF                                   )

    This instrument was acknowledged before me at _____ __.M. on _____ by Stephanie Marie Ure.

_____
Notary Public, State of Texas

    I, the notary public whose signature appears above, certify that I am not an attorney representing either party to this agreement.

_____

Confidential - Attorneys' Eyes Only                              URE_001105

## Waiver of Disclosure of Financial Information

This Waiver of Disclosure of Financial Information is made by Frank Richard Ahlgren, III. and Stephanie Marie Ure (the "parties"). The parties are not now married and are executing this waiver in accordance with the provisions of section 4.006 of the Texas Family Code.

### 1.    Waiver of Disclosure by Frank Richard Ahlgren, III.

I, Frank Richard Ahlgren, III., in contemplation of my marriage to Stephanie Marie Ure, acknowledge receiving a copy of the proposed premarital agreement. I have read it and fully understand it. I have been provided a fair and reasonable disclosure of the property and financial obligations of Stephanie Marie Ure. I voluntarily waive any further disclosures regarding the property, including its value, and the financial obligations of Stephanie Marie Ure beyond the disclosures provided in the proposed premarital agreement. I acknowledge that I have been offered an opportunity to further investigate the property, including its value, and the financial obligations of Stephanie Marie Ure. However, I waive the opportunity for further investigation.

### 2.    Waiver of Disclosure by Stephanie Marie Ure

I, Stephanie Marie Ure, in contemplation of my marriage to Frank Richard Ahlgren, III., acknowledge receiving a copy of the proposed premarital agreement. I have read it and fully understand it. I have been provided a fair and reasonable disclosure regarding the property and financial obligations of Frank Richard Ahlgren, III.. I voluntarily waive any further disclosures regarding the property, including its value, and the financial obligations of Frank Richard Ahlgren, III. beyond the disclosures provided in the proposed premarital agreement. I acknowledge that I have been offered an opportunity to further investigate the property, including its value, and the financial obligations of Frank Richard Ahlgren, III.. However, I waive the opportunity for further investigation.

### 3.    Execution

The parties acknowledge executing this Waiver of Disclosure of Financial Information in multiple originals on the dates and at the times of the acknowledgments. The parties further acknowledge signing this Waiver of Disclosure of Financial Information before the execution of the premarital agreement.

_____
Frank Richard Ahlgren, III.

_____
Stephanie Marie Ure

STATE OF TEXAS             )
COUNTY OF Travis       )

    This instrument was acknowledged before me at _____3:14_____ P.M. on
_November 12, 2021_____ by Frank Richard Ahlgren, III.

_____
Notary Public, State of Texas

> YANET ALVARADO
> MY COMMISSION EXPIRES
> JULY 16, 2023
> NOTARY ID: 132089050

STATE OF TEXAS             )
COUNTY OF Travis       )

    This instrument was acknowledged before me at _____3:14_____ P.M. on
_November 12, 2021_____ by Stephanie Marie Ure.

_____
Notary Public, State of Texas

> YANET ALVARADO
> MY COMMISSION EXPIRES
> JULY 16, 2023
> NOTARY ID: 132089050

**Confidential - Attorneys' Eyes Only**                          **URE_001107**